## LOCKHART v. WILLIAMS et al.

### No. 6141.

Court of Civil Appeals of Texas. Texarkana.

March 8, 1945.

Rehearing Denied March 22, 1945.

Hatchell & Hatchell, Austin C. Hatchell, Jack E. Price, and Sam J. Dotson, all of Longview, and Richard Critz, of Austin, for appellant.

Hurst & Burke, Hamp P. Smead, and W. C. Holcombe, all of Longview, and Jones & Jones, of Mineola, for appellees.

WILLIAMS, Justice.

Appellant, Tom Lockhart, plaintiff below, executed and delivered on February 7, 1935, to Mrs. Harriet Knox two oil and gas leases on the undivided interests of ⅓₆₀ and ⅓₉₄ then owned by Lockhart in a 290-acre tract out of the L. B. Outlaw Survey, Gregg County. As recited in each lease:

"The consideration for this leasehold estate paid and to be paid is the sum of $15000.00 per well location to be paid if, as and when the oil is produced and to be paid out of one-fourth of the seven-eighths of the oil when produced & sold.

"The amount to be paid to be determined by the proportion of the $15000.00 that the proportion of the interest owned and conveyed herein bears to the ⅞ interest; in other words the amount to be paid and the proportion in which it is to be paid to be determined by the fractional interest herein conveyed bears to the whole of the ⅞."

The foregoing with the probable payment of $1 on each lease represents the total consideration paid by Mrs. Knox.

Owners of other mineral interests in the 290-acre tract had theretofore executed oil and gas leases to various oil operators including W. C. Knox and Joe Holcomb, husband and son, respectively, of Mrs. Knox. As a result of segregation agreements between the various leaseholders, a leasehold estate covering a particular seven-acre tract was set apart to Mrs. Knox and Joe Holcomb, and as a result of a later agreement between the latter two, Mrs. Knox acquired a leasehold estate on a .45-acre parcel out of the seven acres. Under an instrument dated February 27, 1935, Lockhart quitclaimed unto Mrs. Knox "all my right, title and claim in and to the 7 acres" but therein stipulated, "It is expressly understood that this instrument shall in nowise divest me of any of my royalty rights in and under above tract of land." Then, on May 22, 1935, Lockhart executed a release to Mrs. Knox which recited the execution of the two oil and gas leases and that the leases had provided for the payment by Mrs. Knox to him of $15,000 out of each location of a well. This instrument released Mrs. Knox "from the payment of such sum or any amount for any location of well made on above mentioned seven acres." But the said lease stipulated, "it is especially understood and agreed that the release from the payment of such sum for a location on the said 7 acres in no way affects the agreement and obligation for payment for a location on any other portion of the said 293 acres." A producing oil well was completed by Mrs. Knox on the .45-acre parcel on December 7, 1937, and later the leasehold and well was conveyed to her daughter, Mrs. G. E. Williams.

According to evidence offered by Lockhart, Mrs. Knox represented to him that as the original leases called for $15,000 oil payment, it would be necessary that such oil payment be released by him for no one would drill a well with such a prior claim outstanding; and that he executed both the quitclaim deed and release under the agreement had with Mrs. Knox and for the consideration that she would partition the seven acres with her son and drill a location and when the well was completed, "Tom, I will pay you, I will give you the $15,000"; "give me my oil payments out of ¹⁄₁₆ of the oil." According to Mrs. Knox, the claim of Lockhart in the 290-acre tract was in controversy and he was not being paid any royalty from any producing well and he executed the instruments upon the agreement and for the consideration that she would bear the expense of clearing his title on the whole, if he would give such release and quitclaim on the seven acres

and that she had expended her funds in clearing his title.

The evidence amply supports the jury's findings in the affirmative to the two special issues submitted. Special Issue No. 1 reads: "Do you find from a preponderance of the evidence that prior to the execution of the instrument dated February 27, 1935, designated herein as Plaintiff's Exhibit No. 3, there was an agreement between the plaintiff, Tom Lockhart, and the defendants, Mrs. Harriet H. Knox and W. C. Knox, that if said plaintiff would give her a quitclaim deed to the 7 acres in question, that these defendants, in turn, and as a consideration thereof, would execute and deliver to him, when the well was completed, an oil payment in the sum of $15,000 to be paid out of 1/16th of the oil, gas and other minerals produced from the .45 acre in question?" Special issue No. 2 made a similar inquiry with respect to the instrument dated May 22, 1935.

Judgment non obstante veredicto was entered by the court which denied Lockhart any recovery against Mrs. Harriet Knox et vir. or Mrs. G. E. Williams et vir., the defendants below.

In the original petition filed by Lockhart on January 18, 1938, in which he named as defendants an attorney, a supply house, the Magnolia Petroleum Company, the Merrett Drilling Company, Mrs. Knox, Mrs. Williams, and their respective husbands, he alleged that he is "the owner of an oil payment in the sum of $15,000 payable out of 1/4 of 7/8 of the oil if, as and when produced from" the .45-acre tract; that "he is also the owner of an oil payment in the sum of $7500 to come out of an additional 1/4 of 7/8 of the oil in that the defendants or some of them bound and obligated themselves to deliver to the pipe lines free from costs and to the credit of plaintiff such amount out of the proceeds of an additional 1/4 of the 7/8 of the oil if and when produced from" the .45-acre tract. He alleged that the defendants and each of them are asserting some claim to said oil payments, but whatever claim they have, the same are subordinate and inferior to plaintiff's oil payments and void but nevertheless a cloud upon plaintiff's title. He charged that at the time the defendants acquired their respective claims they had knowledge and notice of plaintiff's claim.

He prayed that he "have judgment against the defendants and each of them establishing his said oil payments as above set out and directing their payment and removing the clouds from his title thereto and that he have such other and further relief in law and in equity as he may be entitled to and will ever pray."

Five years later, on January 16, 1943, Lockhart filed his first amended original petition in which all of above parties except appellees Mrs. Knox, Mrs. Williams and their respective husbands were dropped as defendants. In the first amended original petition Lockhart alleged in detail the various transactions leading up to and including his execution of the two oil and gas leases and their stipulation for the $15,000 oil payment out of 1/4 of the 7/8 produced. He then alleged the circumstances leading up to the execution by him of the quitclaim deed; his reliance upon the oral promises and representation made to him by Mrs. Knox that she would give him an oil payment of $15,000 to be paid him out of 1/16 of 7/8 of the oil as, if and when produced; that this oral promise and agreement by Mrs. Knox constituted the only consideration for his execution of the quitclaim deed. He alleged that the assignment of the leasehold on December 31, 1937, by Mrs. Knox to her daughter was a simulated transaction without consideration and done in an attempt to cheat and defraud him of the oil payment.

The following allegation and prayer for relief reflect the cause of action stated in his first amended original petition.

" * * * that by virtue of the false and fraudulent statements and representations so made by the defendant, Mrs. Knox to this plaintiff, and by virtue of understanding, agreement and contract with this plaintiff to the effect that she would, as soon as the well was drilled and equipped and put into operation, give to him the $15,000.00 oil payment to be paid out of 1/16 of the 5/8 of the oil produced * * * and by virtue of obtaining said quit-claim deed under the false pretenses as aforesaid, she became liable and bound and is now under legal obligation to execute and deliver to this plaintiff the said oil payment; that by reason of all of said allegations, * * * Mrs. Harriet H. Knox, become and is now a trustee for and on behalf of this plaintiff, holding said oil payment, the accrued money thereon and the interest in trust for him, and therefore, she is now duly and legally bound to con-

vey such interest to him. That she has failed and refused to do so although said well has been in operation for many years, and was in operation for approximately one year prior to the filing of this suit.

\*  \*  \*  \*  \*

"Premises considered  \*  \*  \*  the plaintiff prays that on a final hearing \*  \*  \* he have judgment against the defendants \*  \*  \* divesting them of all right, title, interest and estate in and to $15,000.00 oil payment, the same to be paid out of $\frac{1}{16}$ of $\frac{5}{8}$ of the oil as, if and when produced \*  \*  \* with such orders, decrees and judgments as may be necessary to enforce plaintiff's legal rights herein; and in the alternative \*  \*  \* that he have judgment against the defendant, Mrs. Harriet H. Knox, for $15,-000.00 with interest thereon \*  \*  \* since the well began to produce oil \*  \*  \* and such other and further reliefs, at law and in equity, both special and general \*  \*  \*."

In his third amended original petition, filed September 16, 1943, upon which trial was had, plaintiff repeats substantially his allegations in the first amended original petition, and in addition thereto pleads that Mrs. Knox had no intention to carry out her agreement at the time she made such promises fraudulently made by her to deceive plaintiff and acquire his property; and by reasons aforesaid "plaintiff is entitled to have said deed cancelled and declared void, leaving him to hold his interest under the original oil lease \*  \*  \*." In his prayer for judgment he sought: (1) A decree that Mrs. Knox was holding an oil payment out of $\frac{1}{16}$ of the $\frac{5}{8}$ oil so produced in trust for him; (2) in the alternative, for specific performance of the agreement; and (3) cancellation of the quitclaim deed and decreeing that plaintiff recover the $15,000 oil payment as stipulated for and set out in the original oil leases.

A producing oil well was completed December 7, 1937, on the .45-acre tract. Defendants' tactics in not delivering to plaintiff the oil payment after the completion of the well aroused plaintiff's suspicion to such an extent as to cause him to employ counsel and file on January 18, 1938, the suit as reflected in his original petition, above set out.

It is apparent that plaintiff's original petition is absent any allegation or prayer for relief predicated upon cancel-lation of any instrument or upon any oral promise growing out of the execution of any instrument. If plaintiff for the first time sought cancellation of the quitclaim deed or release grounded on fraud under his third amended original petition, or if it be conceded that the allegations and his prayer for relief set up in his first amended original petition were sufficient to support an action to cancel the quitclaim deed or the release on the grounds of fraud, in either event such relief sought grounded on fraud was barred by Article 5529, R.C.S. of Texas; for more than four years had elapsed at the time of filing of either after the discovery by plaintiff of the alleged fraud. Ebberts v. McLean, Tex.Civ.App., 68 S.W.2d 1077, 1083; Hopper v. Hargrove, Tex.Civ.App., 154 S.W.2d 978; Dearing v. Lawrence, Tex.Civ.App., 156 S. W.2d 1019; Universal Life & Acc. Ins. Co. v. Johnson, Tex.Civ.App., 120 S.W.2d 314; Deaton v. Rush, 113 Tex. 176, 252 S. W. 1025. The quitclaim deed and the release, either or both, if obtained by fraud, were not absolutely void but voidable only. Until and unless cancelled, either of said instruments became an effective bar to a recovery of the oil payment as provided for under the terms of the original oil leases. Deaton v. Rush, supra; Universal Life & Acc. Ins. Co. v. Johnson, supra.

Articles 5529 and 5531, R.C.S., are applicable as a bar to a recovery grounded upon the oral promise, regardless of whether the facts and circumstances created a trust or gave rise to an action for specific performance. If a trust had been created or if a valid contract had been effected by reason of oral agreement at the time the release and the quitclaim deed, or either, were executed, both had been breached and repudiated with knowledge to plaintiff for more than four years prior to his action on such breach as declared on in his first and third amended original petition. Ebberts v. McLean, Tex.Civ.App., 68 S.W.2d 1077, and authorities cited on page 1084; 34 Am.Jur., Limitation of Actions, Secs. 175, 179; 42 T. J., Trusts, Sec. 134. The case was tried as if the amended pleadings included allegations with respect to the execution of the release and the oral agreement incident thereto, and in above discussion we have assumed that they were sufficient.

The application of Articles 5529 and 5531, supra, known as the four-year statutes of limitation, urged by defendants in

special exceptions and motion for instructed verdict and the adjudicated cases cited sustain the trial court's action in rendering the judgment non obstante veredicto for defendants, and the judgment will be affirmed.